UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Hillcrest Bank, | Civil Action No. |
| Plaintiff, | |
| vs. | |
| BRYAN CAVE LLP, | |
| Defendant. | |

## VERIFIED COMPLAINT

Plaintiff Federal Deposit Insurance Corporation ("FDIC"), in its capacity as receiver for Hillcrest Bank, for its complaint against Bryan Cave LLP ("Bryan Cave") states as follows:

## INTRODUCTION

1.       This action is brought by the FDIC in its capacity as receiver for Hillcrest Bank ("FDIC-Receiver") against Bryan Cave for the immediate return of banking records in Bryan Cave's possession, the cessation of destruction of those records, and immediate provision of information regarding the dissemination of those records. Certain directors and officers of Hillcrest Bank caused a large amount of copied bank files and records to be provided to Bryan Cave (the "Copied Bank Records"). Those Copied Bank Records include private and

confidential financial and other information about Hillcrest Bank's customers, confidential "Suspicious Activity Reports" filed by the bank, FDIC Examination Reports and other confidential regulatory information, and other confidential files and information regarding the bank's business. The Copied Bank Records belonged to Hillcrest Bank, and now belong to the FDIC-Receiver, and the copying and/or removal of those records from Hillcrest Bank was improper and unlawful.

2.      After the FDIC-Receiver demanded the immediate return of the Copied Bank Records and information regarding where and how those records had been stored and who had been given access, Bryan Cave sent the Copied Bank Records back to its clients, resigned from its engagement by those clients, and has apparently begun destroying electronic copies of the records that had been placed on Bryan Cave's electronic systems, thereby destroying evidence regarding how and where the Copied Bank Records were stored at Bryan Cave and who accessed those records.

## PARTIES, JURISDICTION AND VENUE

3.      The FDIC is a corporation organized and existing under the laws of the United States of America, with its principal place of business in Washington, D.C. FDIC is acting as receiver for Hillcrest Bank in bringing this action.

4.      Prior to October 22, 2010, Hillcrest Bank was an FDIC-insured bank regulated by the Kansas Office of the State Bank Commissioner and the Federal Deposit Insurance Corporation.

5.      On October 22, 2010, Hillcrest Bank of Overland Park, Kansas (the "Bank") was closed by the Kansas Office of the State Bank Commissioner, and the FDIC accepted appointment as receiver.

6.      This Court has subject matter jurisdiction over this action pursuant to provisions of the Federal Deposit Insurance Act, 12 U.S.C. § 1811 *et seq.*; 12 U.S.C. §§ 1819(b)(1), 1819(b)(2)(A) (the "FDIA"); and 28 U.S.C. §§ 1331 and 1345. Actions to which the FDIC is a party in its receivership capacity are deemed to arise under the laws of the United States.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the Bryan Cave office in which the Copied Bank Records are being kept, and from which Bryan Cave engaged in its conduct, is in Atlanta, Georgia.

## FACTUAL ALLEGATIONS

### The FDIC's Receivership of Hillcrest Bank

8.      Under the laws of the United States, the FDIC-Receiver is charged with the duty of winding up the affairs of Hillcrest Bank. 12 U.S.C. § 1821, *et seq.* The orderly closing of failed banks is critical to the FDIC-Receiver's mission of maintaining the stability and public confidence in the nation's financial system.

9.     Pursuant to 12 U.S.C. § 1821(d)(2), upon being appointed receiver on October 22, 2010, the FDIC-Receiver succeeded to all rights, titles, powers and privileges of Hillcrest Bank and became the owner of Hillcrest Bank's books, records and assets, including all copies.

10.     None of Bryan Cave's clients currently have any role in the operation or management of the failed bank or the receivership.

Hillcrest Bank Possessed Confidential and Private
Information About Its Customers and Its Business.

11.     Hillcrest Bank, in the course of its business, created and stored records which contained sensitive, personally identifiable and nonpublic personal information about its customers, including social security numbers, taxpayer identification numbers, account information, loan applications, personal financial statements and credit reports of customers and guarantors ("Confidential Customer Information"). Most or all of this type of Confidential Customer Information relevant to a particular loan is gathered and kept by the bank in an official loan file (the "Loan File").

12.     Hillcrest Bank also had a large number of other confidential documents and files relating to the FDIC's examination and investigation of the Bank, and regarding the Bank's business and finances, including, but not limited to, financial statements and reports, internal meeting minutes, regulatory

correspondence and examination reports, and strategic and business plans (the "Confidential Bank Information").

13.     Confidential Customer Information and Confidential Bank Information includes any and all copies of said information.

14.     Pursuant to 15 U.S.C. §§ 6801 and 6805(b) of the Gramm-Leach-Bliley Act ("GLBA"), 12 U.S.C. § 1831p-1 of the FDIA, and 12 C.F.R. Part 364, Hillcrest Bank was required to protect the security and confidentiality of the Confidential Customer Information by establishing standards for safety and soundness as well as information security standards.

15.     Accordingly, Hillcrest Bank created various policies and procedures including, but not limited to, its Information Technology Risk Management Policy, which are specifically designed to ensure compliance with federal law and to maintain the privacy, safety and soundness of the Confidential Customer Information and to protect the Confidential Bank Information as well.  As an example of the types of policies and procedures adopted by Hillcrest Bank, a copy of Hillcrest Bank's Information Technology Risk Management Policy is attached hereto as *Exhibit A* and the Bank's Customary Privacy Notice is attached hereto as *Exhibit B*.

16.     In its Information Technology Risk Management Policy, Hillcrest Bank explicitly states that "All individuals are required to maintain the

confidentiality of customer information, including personal identifiable information and customer account information." *Exhibit A*, Section 2.1.4, at p. 8. The policy then sets forth specific detailed requirements and instructions for accessing, using, storing, and disposing of the bank's confidential information. *Exhibit A*, Section 2.1.3 entitled "Labeling Confidential Information;" Section 2.2.2 entitled "Managing Hard Copy Printouts;" Section 2.2.5 entitled "Lockable Storage;" Section 2.6 entitled "Electronic Storage;" and Section 2.9 entitled "Disposal of Information."

17.    In its notice to its customers, Hillcrest Bank represents that it "restricts access to your non-public personal information to only those employees who need the information to provide products or services to you." *Exhibit B.*

18.    To further protect the Confidential Customer Information in its possession, as well as its own Confidential Bank Information, Hillcrest Bank required key employees to execute contracts providing that they would maintain all confidential bank and customer information as confidential and proprietary to Hillcrest Bank, and that they would return to the bank all bank property, including all confidential information, upon termination of their engagement by the Bank (the "Confidentiality and Return of Information Covenants").

19.    Jeffrey Wheeler was Chief Executive Officer of Hillcrest Bank; G. Richard Degen was Chief Financial Officer of Hillcrest Bank; and Brian Schneider

was President of Hillcrest Bank until the appointment of the FDIC-Receiver on

October 22, 2010.   Degen, Wheeler and Schneider each properly and effectively

executed contracts containing Confidentiality and Return of Information

Covenants with Hillcrest Bank.   For example, both Degen and Wheeler signed an

Incentive Compensation Agreement that explicitly provides, in part:

> The Participant will use his best efforts at all times to hold in
> confidence and to safeguard any Confidential Information from being
> disclosed to any unauthorized person and, in particular, will not
> permit any Confidential Information to be read, duplicated or copied.
> ***The Participant will return to the Bank all Confidential Information
> in the Participant's possession or under the Participant's control***
> when the duties of the Participant no longer require the Participant's
> possession thereof, or ***whenever the Bank shall so request***, and in any
> event will promptly return all such Confidential Information if the
> Participant's relationship with the Bank is terminated for any or no
> reason and will not retain any copies thereof.

(emphasis added).   Copies of these contracts are attached as *Exhibits C* and *D*

hereto.

20.     On information and belief, Schneider signed at least one agreement

with Hillside Bank containing the same or substantially similar provisions, but the

files containing those agreements have not yet been located.

21.     The Bank performed all of its obligations under the agreements

containing the Confidentiality and Return of Information Covenants, and those

agreements are valid and binding contracts.

22.     Consumers gave Hillcrest Bank their Confidential Customer Information for the purpose of furthering their financial transactions and in reliance on both Hillcrest Bank's privacy notice, described above, as well as its statutory duties to preserve and protect such information in strict confidence.

The Copied Bank Records Were Removed On the Eve of Receivership.

23.     At all relevant times, Bryan Cave and its clients were aware that Hillcrest Bank was severely under-capitalized, that the Bank was on the verge of failing, and that the FDIC would be appointed as receiver. Federal regulators repeatedly advised Hillcrest Bank of its financial problems and that the Bank was subject to enforcement action.

24.     On or about September 26, 2010, Bryan Cave was engaged to represent and advise certain individuals who had been acting as officers and directors of Hillcrest Bank, including Jeffrey Wheeler, Scott Asner, Irwin Blitt, R.J. Campbell, Jack Fingersh, Paul Fingersh, George Lieberman, Brian Schneider, and Gerald White (the "Directors and Officers"). A copy of the engagement letter memorializing this retention is *Exhibit E* (due to the confidential nature of the letter, a copy is being provided to the Court separately). As the engagement letter makes clear, Bryan Cave was retained to represent and advise the Directors and Officers regarding the protection of their own, individual interests with regard to

the failure of Hillcrest Bank and the impending FDIC receivership, not the interests

of the Bank itself, which was already represented by counsel.

25.     In late September, G. Richard Degen, then Chief Financial Officer

of Hillcrest Bank, instructed the Bank's IT personnel to copy and provide to Bryan

Cave various types of files, including, but not limited to, entire email boxes of

selected employees as they existed on the date of copying.  Degen requested that

these records should be copied and provided to Bryan Cave, and they were copied

and sent to Bryan Cave's Atlanta office, on portable storage disks (CDs and

DVDs) (the "Disks") on various dates through mid-October, during the weeks just

prior to the failure of Hillcrest Bank.  During those weeks, on a rolling basis,

batches of confidential bank files were downloaded onto Disks and provided to

Bryan cave.  Some of the information was copied onto Disks for Bryan Cave at

Mr. Degen's request and some at the request of Jeffrey F. Wheeler.  The final

batch of copies was downloaded and sent on a Disk to Bryan Cave in Atlanta on

October 20, 2010—two days before Hillcrest Bank failed on October 22, 2010.

26.     Copied Bank Records also were provided to Bryan Cave on a

portable hard drive. Specifically, sometime during the week of October 4, 2010,

Brian Schneider, President of Hillcrest Bank, directed and caused Charlene

Gordon, the bank's Vice President of IT Risk Management, to provide an Atlanta

Bryan Cave attorney with a portable "Western Digital" hard drive (the "Portable

Hard Drive") containing a complete copy of Hillcrest Bank's Loan Files and other confidential information. Schneider specifically instructed that this Portable Hard Drive should be placed into Bryan Cave's possession without any of the files on that hard drive being encrypted.

27.     The Copied Bank Records stored on the Disks and/or the Portable Hard Drive provided to Bryan Cave's Atlanta office contained Confidential Customer Information, as well as Confidential Bank Information including financial statements, strategic and business plans, meeting minutes, and confidential information relating to the FDIC's regulatory activities, such as FDIC "Examination Reports" and findings, and other sensitive documents, such as "Suspicious Activity Reports" submitted by Hillcrest Bank.

28.     The Copied Bank Documents were obtained by Bryan Cave to facilitate its ongoing representation of certain Directors and Officers. Bryan Cave was not using the Copied Bank Documents to provide any services to the Bank, its customers or depositors as required by law and as represented to the Bank's customers in its "Customer Privacy Notice."

29.     When such information was copied onto the Disks and/or allowed to leave the bank premises on the unencrypted Portable Hard Drive, the Copied Bank Records were rendered portable and vulnerable, and Hillcrest Bank lost control and dominion over the Copied Bank Records and over their integrity, secrecy, and

protection. Critically, Hillcrest Bank had no way to track the whereabouts of its Confidential Customer Information or otherwise protect the information from identity theft or fraud.

30.     The Copied Bank Records were provided to, and held by, Attorneys and others in Bryan Cave's Atlanta, Georgia office and were put under the control and authority of attorneys working in and from Bryan Cave's Atlanta, Georgia office.

31.     Hillcrest Bank failed on October 22, 2010.

The Copying, Downloading, and Removal of the
Copied Bank Records Was Improper and Unlawful.

32.     Neither Mr. Degen, Mr. Wheeler nor Mr. Schneider were authorized to remove the Copied Bank Records from the bank premises as described above, or to provide the Copied Bank Records to Bryan Cave, or to convert those records to their own (or any other officer or director's) personal and individual possession, use and benefit.

33.     Hillcrest Bank did not properly consent to Bryan Cave's acquisition of a copy of the Bank's Loan Files, the other confidential files and documents provided on the Portable Hard Drive, or the other Copied Bank Records being downloaded onto the Disks and sent off premises, and Bryan Cave is not properly authorized to possess the Copied Bank Records.

34.     Bryan Cave's acquisition and possession of the Copied Bank Records as described above was and is contrary to Hillcrest Bank's internal policies and procedures.   Transfer of the Copied Bank Records to Bryan Cave violated the bank policies adopted in accordance with federal law to protect the nonpublic personal information of Hillcrest Bank's customers.   For example, in its Information Technology Risk Management Policy, Hillcrest Bank explicitly stated that "Customer account information is the intellectual property of Hillcrest Bank and must only be used to support the direct and explicit business functions of the Bank.   Under no circumstances shall customer account information be used for personal gain or in a manner deemed illegal or inappropriate." *Exhibit A.*

35.     The Information Security Policy approved and adopted by the Hillcrest Bank Board of Directors on September 26, 2007 contains a section entitled, "Using Removable Storage," which states as follows:

> The use of removable storage devices and media must only be used to directly support the business requirements *and never be used for personal purposes.   Users of Bank network resources are strongly discouraged from using removable storage devices to transport data between parties, and should never be used to remove data from Bank premises unless properly authorized.*   Owners of removable storage media must ensure that the media contains only appropriate information and does not contain any ancillary information, viruses, malicious or other potentially harmful information.

Section 2.3.2 (emphasis added).   Section 2.3.2 also defines "removal storage to include, floppy disks, USB Drives, USB Jump Drives, Tape Media, IPod's or other

personal music devices, or handheld computing devices." A copy of relevant provisions from the Information Security Policy is attached hereto as *Exhibit F.*

36.      Bryan Cave's acquisition and possession of the Copied Bank Records, which contain among other confidential files and information, a large amount of Confidential Customer Information, also violates and/or creates a risk of violating 15 U.S.C. §§ 6801 and 6805(b) of the Gramm-Leach-Bliley Act, 12 U.S.C. § 1831p-1 of the FDIA, and 12 C.F.R. Parts 332 and 364.

37.      Bryan Cave acquired and now possesses the Copied Bank Records through a breach of fiduciary duty by certain of its clients. Wheeler, Degen and Schneider lacked authority to copy and/or remove the Copied Bank Records, including the Confidential Bank Information and Confidential Customer Information, from bank premises and convert that information to their own (or any other Officer's or Director's) individual use, benefit and possession. Wheeler, Degen and Schneider owed a fiduciary duty and duty of loyalty to Hillcrest Bank and owed similar duties to the Bank's customers. Wheeler, Degen and Schneider's conduct described above breached those duties because, *inter alia,* it elevated and served their individual interests above, and to the detriment of, the interests of Hillcrest Bank's customers and the interests of Hillcrest Bank, including the Bank's interest in protecting, and its obligation to protect, Confidential Customer Information.

38.     The copying and transmission of the Copied Bank Records by Bryan Cave's clients, and Bryan Cave's continued possession of the Copied Bank Records, constitutes a breach of the agreements executed by Schneider, Wheeler and Degen described above.

39.     The copying and transmission of the Copied Bank Records by Bryan Cave's clients, and Bryan Cave's possession of the Copied Bank Records constitutes a violation of, and threatens continued violation of, state and federal laws against the use of computers to gain unauthorized access to or obtain financial records or other electronically stored information, including the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a).

40.     On October 27, 2010, FDIC-Receiver sent a letter to Bryan Cave demanding the return of all copies of the Copied Bank Records.

41.     Bryan Cave has refused to return the Copied Bank Records and has contended that it and its clients have the right to possess those records, including the Confidential Customer Information and Confidential Bank Information.

42.     Bryan Cave's acquisition and possession of the Copied Bank Records as described above, and Bryan Cave's refusal to return those records despite demand by the FDIC-Receiver, constitutes conversion.

Bryan Cave Has Provided Access and Disseminated
the Copied Bank Records To Unknown Persons.

43.     On October 27, 2010, counsel for FDIC-Receiver wrote to Bryan

Cave objecting to its clients' removal, and their possession, of the Copied Bank

Records and seeking information regarding where those records had been stored,

who had access to them, and whether the records had been copied or accessed.   A

copy of this letter is attached hereto as *Exhibit G-1* (Exhibit G is a composite

exhibit containing copies of the parties' written communications).

44.     Bryan Cave responded by disagreeing with respect to whether it and

its clients could properly and lawfully possess the Copied Bank Records, but

agreed that, "all files relating to the Bank retained by this firm and/or our clients

will continue to be protected, with limited electronic access only, and that none of

these files will be disclosed, disseminated, or otherwise discussed with anyone

outside of the firm's team assigned to this matter." *See* letter dated 10-28-10

attached hereto as *Exhibit G-2*. Bryan Cave again confirmed in an email dated

November 2, 2010 that

> Both Bryan Cave LLP ("Bryan Cave") and its clients, the former
> directors and certain officers of Hillcrest Bank of Overland Park,
> Kansas, will agree and commit that going forward Bryan Cave will
> restrict all access to all of the documents and files from the Bank that
> were copied and provided to Bryan Cave prior to the date of closing
> of the Bank such that nobody will have the ability to access any of
> those documents or files, except for one technology point person
> within the firm, who further agrees and commits not to exercise his or
> her ability to access the subject files/documents unless and until

the FDIC initiates further formal action to pursue the claims set forth in its October 27, 2010 demand letter to our clients (the "Demand") or litigation is otherwise commenced.

*See* 11-2-10 email from Mr. Bielema to Mr. Burt attached hereto as *Exhibit G-7*.

In a letter dated November 2, 2010, Bryan Cave confirmed that "no one at our firm or in our client group will access the files at all unless and until further steps by the FDIC to pursue [an action against Hillcrest Bank's officers and directors] are initiated." *See* 11-2-10 letter from Mr. Bielema to Mr. Burt attached hereto as *Exhibit G-6*.

45.    Three days later, on November 5, 2010, at approximately 11:00 a.m., Bryan Cave's clients apparently terminated their engagement with Bryan Cave.  Bryan Cave did not notify FDIC-Receiver of this development, it did not request direction, or attempt to reach any agreement with the FDIC-Receiver or its counsel, regarding the handling or treatment of the Copied Bank Records.  Instead, at the end of the day on Friday, after receiving an emailed letter from FDIC-Receiver's counsel again requesting immediate return of the Copied Bank Records at 1:58 p.m. Central Time, and after its engagement had already been terminated by its clients, Bryan Cave told counsel for FDIC-Receiver that it was "reaching out to the directors and officers and we anticipate being able to respond on Monday." *See* 11-5-10 email from Mr. Brockman to Mr. Burt, attached hereto as *Exhibit G-10*.

46.     Again on Monday, at 1:08 in the afternoon, Bryan Cave told FDIC-Receiver's counsel that it expected "to be able to send you a response later this afternoon." *See* 11-8-10 email from Mr. Brockman to Mr. Burt, attached hereto as *Exhibit G-11*.   Not until the end of the afternoon, at 4:21 p.m., did Bryan Cave send a letter to FDIC-Receiver's counsel informing him that Bryan Cave's engagement by the bank's former officers and directors had been terminated the previous Friday morning. *See* 11-8-10 letter from Mr. Brockman to Mr. Burt, attached hereto as *Exhibit G-9*.

47.     This letter also informed FDIC-Receiver's counsel, after the fact, that Bryan Cave had already "shipped all of the documents that we received back to the clients." *Id.*

48.     Bryan Cave did not provide any information regarding when, to whom, at what address, and by what means, the Copied Bank Records were shipped from Bryan Cave's premises, and what encryption or other protections, if any, were implemented with respect to any of the Copied Bank Records.

49.     Bryan Cave's November 8, 2010 letter indicates that electronic copies of the Bank Records had been created at Bryan Cave, but neither Bryan Cave nor its clients provided any of the requested information regarding the storage and copying of the Copied Bank Records, including where the Copied

records had been stored, who was allowed access to them, and whether the records had been copied or accessed.

50.     Such information might be gleaned from metadata and other electronic and forensic evidence in and associated with the Copied Bank Records, but Bryan Cave's letter stated that electronic copies of the Bank Records had been created at Bryan Cave and that Bryan Cave is now working to delete those copies.

51.     The FDIC-Receiver does not know whether and how many copies of the Copied Bank Records were made while those records were in Bryan Cave's Possession, where the records and the copies were stored, who had access to the records and the copies, how and when the records were "shipped" out of Bryan Cave's premises, in what form they were shipped, whether any encryption or other protections were utilized, where the Copied Bank Records are now, who has custody of them, who has access to them, or what is happening to them.

## **FIRST CLAIM FOR RELIEF**

(Declaratory Relief)

52.     The FDIC-Receiver realleges and incorporates by reference paragraphs 1 through 51 above.

53.     The rights and interests of the FDIC-Receiver in, and Defendant Bryan Cave's right to possess, the Copied Bank Records are an actual controversy pursuant to 12 U.S.C. § 1821(d)(2).

54.     As described above, Bryan Cave's acquisition and possession of the Copied Bank Records was and is improper and unlawful under state and federal law, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 and 6805(b); the FDIA, 12 U.S.C. § 1831p-1; and 12 C.F.R. Parts 332 and 364; constitutes an improper and unlawful conversion; constitutes a breach of their clients' Confidentiality and Return of Information Covenants; constitutes a breach of the fiduciary duties and duty of loyalty owed by Bryan Cave's clients to Hillcrest Bank; and constitutes a violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a).

55.     FDIC-Receiver is entitled to a judgment pursuant to 28 U.S.C. § 2201 declaring that:

56.     (a) Defendant Bryan Cave must provide a sworn statement providing the following information:   (1) where the Hillcrest Bank records provided to Bryan Cave in October 2010 were and/or have been stored from the moment they were removed from the Bank to the present time; (2) the identity of all persons and organizations who had access or may have had access to any of those records or to the hardware on which they were stored during that time; (3) whether any of those records have been accessed, copied, altered, destroyed or contaminated in any way during that time; and (4) when, to whom, at what address, and by what means, the Copied Bank Records were shipped from Bryan Cave's

premises, and what encryption or other protections, if any, were implemented with respect to any of the Copied Bank Records, and if so, which ones.

(b)     Defendant Bryan Cave, its agents, assigns and anyone acting in concert with any of them are prohibited from;

(1)     possessing, using, deleting, destroying, modifying, moving, copying or disclosing any of the Copied Bank Records; and

(2)     obtaining, accessing, retrieving, using, deleting, destroying, modifying, moving, copying or disclosing any originals or copies of any of the Copied Bank Records;

(c)     The FDIC-Receiver and its assigns are the sole owners of the Copied Bank Records, including any and all copies of said information;

(d)     Bryan Cave and its agents, assigns and anyone acting in concert with any of them have no ownership interest in the Copied Bank Records or any copies of said information; and

(e)     Defendant Bryan Cave and its agents, assigns and anyone acting in concert with any of them must return any and all of the Copied Bank Records that have not already been returned, including any and all copies of said information, to the FDIC-Receiver, retaining no such records or any copies thereof.

## SECOND CLAIM FOR RELIEF

(Kansas Trade Secrets Act)

57.     FDIC-Receiver realleges and incorporates by reference paragraphs 1 through 56 above.

58.     The Copied Bank Records contain Confidential Bank Information and Confidential Customer Information that constitutes trade secrets in that:

(a)     the information has an independent economic value as a result of not being generally known to the public or to persons who could obtain economic value from its disclosure or use; and

(b)     Hillcrest Bank expended considerable sums of money and time compiling, securing, and protecting the information in these documents and records.   Hillcrest Bank took reasonable measures to keep the information confidential, including instituting detailed policies to maintain the security and confidentiality of both electronic and hard copies of the information as described above and restricting access to the information on a need-to-know basis.   Paper files have been kept in secure storage areas under lock and key.   The Loan Files, for example, were maintained in a secure area of Hillcrest Bank's Bannister branch and are accessible only via keyfob.   Moreover, confidential information and data stored electronically are password protected.   Emails containing certain types of

confidential information are automatically encrypted. Laptop computers used to access such information are also encrypted.

59. The value of the Copied Bank Records cannot be overstated. For example, the Confidential Customer Information and Confidential Bank Information would be valuable to and provide an unfair advantage to anyone seeking to acquire assets from the FDIC-Receiver or the successor to Hillcrest Bank, and the Confidential Customer Information would also be valuable to the many individuals and entities that seek private consumer information as a means to hawk goods and services, engage in identify theft, and otherwise enrich themselves through the use of such information.

60. Defendant Bryan Cave and its clients have no ownership interest in the Copied Bank Records or any copies of such information.

61. The Copied Bank Records and any and all copies of such information are the property of the FDIC-Receiver.

62. Defendant Bryan Cave and its clients have no affiliation with the FDIC-Receiver and are not otherwise entitled to or authorized to possess the Copied Bank Records.

63. Defendant Bryan Cave has violated the Kansas Trade Secrets Act by, *inter alia,* acquiring the Copied Bank Records from Hillcrest Bank for use by Bryan Cave's clients with knowledge and/or reason to know that the information

was (a) being acquired by Bryan Cave in breach of a duty to maintain its secrecy; and (b) derived from and disclosed to Bryan Cave by, and for use by, a person who owed a duty to Hillcrest Bank or FDIC-Receiver to maintain the secrecy of the information or limit its use; and/or (c) derived from and disclosed to Bryan Cave by, and for use by, a person who acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use.

64.     Further misappropriation of trade secrets is threatened, in that Bryan Cave obtained the Copied Bank Records for the purpose of using that information without authorization from Hillcrest Bank or the FDIC-Receiver.

65.     FDIC-Receiver has been damaged and will continue to be damaged by Defendant Bryan Cave's acquisition and possession of the Copied Bank Records.  In particular, the secrecy and integrity of the Copied Bank Records has been compromised.  Those records and their confidentiality have been put outside of the FDIC-Receiver's control and into the hands of persons and entities outside of Hillcrest Bank and FDIC-Receiver who have no authority to possess or hold them outside of bank premises or to use or possess them to further their clients' individual interests.

66.     As a result of Defendant Bryan Cave's actual and threatened misappropriation, FDIC-Receiver is entitled to temporary and permanent injunctive relief pursuant to the Kansas Trade Secrets Act ("KTSA"), including an

order (a) requiring Bryan Cave to immediately return the Copied Bank Records and all copies thereof; (b) enjoining Defendant Bryan Cave from using, deleting, destroying, modifying, moving, copying or disclosing any of the Copied Bank Records; and (c) prohibiting Bryan Cave from possessing, obtaining, accessing, retrieving, using, deleting, destroying, modifying, moving, copying or disclosing any of the Copied Bank Records, any other originals or copies of documents or information containing Hillcrest Bank's Confidential Customer Information, Confidential Bank Information, or any other confidential, proprietary, trade secret or nonpublic information.

67.     FDIC-Receiver is further entitled to all damages, including attorney fees, caused by Defendant Bryan Cave's conduct pursuant to the KTSA in an amount to be proven at trial.

68.     Defendant Bryan Cave engaged in the conduct described above deliberately, willfully and knowingly, and FDIC-Receiver therefore is entitled to an award of its attorney fees pursuant to the KTSA.

### THIRD CLAIM FOR RELIEF

(Conversion)

69.     FDIC-Receiver realleges and incorporates by reference paragraphs 1 through 68 above.

70.     Title to and the right to possess the Copied Bank Records belongs to the FDIC-Receiver.  Although Bryan Cave has no right to possess those records, they remain in Bryan Cave's possession, and Bryan Cave has refused the FDIC-Receiver's demand for return of the records, to the injury of the FDIC-Receiver.

71.     This conduct constitutes an unlawful conversion remediable under the common law.

## FOURTH CLAIM FOR RELIEF

(Unjust Enrichment/Money Had and Received)

72.     FDIC-Receiver realleges and incorporates by reference paragraphs 1 through 71 above.

73.     The Directors and Officers hired Bryan Cave to represent and advise them, as individuals, with regard to their personal and individual interests.  The engagement letter by which the Directors and Officers retained Bryan Cave states and purports to agree that Hillcrest Bank, and not the Directors and Officers, will be responsible for all legal fees in connection with that engagement.  *Exhibit E* at p. 2.

74.     The  Directors' and Officers' purported agreement that the Bank would be responsible for the legal fees in connection with their individual retention of Bryan Cave was beyond their authority, contrary to the Bank's interests, and a violation of their fiduciary duties to the Bank.

75.     Bryan Cave, therefore, has received and has been unjustly enriched by the payments provided to them by Hillcrest Bank for this engagement, including but not limited to the $31,500.00 retainer required by Bryan Cave at the outset of the engagement and subsequent payments of $125,713 for a total of $157,213. Those payments were not properly authorized and were improperly made.  Bryan Cave is not entitled to retain those payments and its continued retention of them would be unjust.

76.     The payments provided to Bryan Cave for this engagement, including but not limited to the $31,500.00 retainer and subsequent payments of $125,713 for a total of $157,213, were not properly authorized and were improperly made.  In equity and good conscience, that money belongs to Hillcrest Bank, and Bryan Cave is not allowed to retain it.

## JURY DEMAND

Plaintiff FDIC-Receiver demands a trial by jury for all issues as to which a jury trial may be allowed.

## PRAYER

WHEREFORE, Plaintiff FDIC-Receiver prays that the Court:

1.     Enter judgment in favor of FDIC-Receiver and against Defendant Bryan Cave declaring that:

(a)     Defendant Bryan Cave must provide a sworn statement providing the following information:   (1) where the Hillcrest Bank records provided to Bryan Cave in October 2010 were and/or have been stored from the moment they were removed from the Bank to the present time; (2) the identity of all persons and organizations who had access or may have had access to any of those records, or to the hardware on which they were stored, during that time; (3) whether any of those records have been accessed, copied, altered, destroyed or contaminated in any way during that time; and (4) when, to whom, at what address, and by what means, the Copied Bank Records were shipped from Bryan Cave's premises, and what encryption or other protections, if any, were implemented with respect to any of the Copied Bank Records, and if so, which ones.

(b)     Defendant Bryan Cave, its agents, assigns and anyone acting in concert with any of them are prohibited from:

(1)     possessing, using, deleting, destroying, modifying, moving, copying or disclosing any of the Copied Bank Records; and

(2)     obtaining, accessing, retrieving, using, deleting, destroying, modifying, moving, copying or disclosing any originals or copies of any of the Copied Bank Records;

(c)     The FDIC-Receiver and its assigns are the sole owners of the Copied Bank Records, including any and all copies of said information;

(d)     Defendant Bryan Cave and its agents, assigns and anyone acting in concert with any of them have no ownership interest in the Copied Bank Records, or any copies of said information; and

(e)     Defendant Bryan Cave and its agents, assigns and anyone acting in concert with any of them must return any and all of the Copied Bank Records that have not already been returned, including any and all copies of said information, to the FDIC-Receiver, retaining no such records or any copies thereof.

2.     Enter judgment in favor of FDIC-Receiver and against Defendant Bryan Cave on all claims stated above;

3.     Award FDIC-Receiver damages in an amount sufficient to compensate it for its losses, in an amount to be proven at trial;

4.     Award FDIC-Receiver the amount by which Defendant has been unjustly enriched, in an amount to be proven at trial;

5.     Order Defendant Bryan Cave to provide verification, including but not limited to a sworn statement, of the following information:

(a)     where the Hillcrest Bank records provided to Bryan Cave in October 2010 have been stored from the moment they were removed from the Bank to the present;

(b)    the identity of all persons and organizations who had access or may have had access to any of those records, or to the hardware on which they were stored, during that time;

(c)    whether any of those records have been accessed, copied, altered, destroyed or contaminated in any way during that time;

(d)    when, to whom, at what address, and by what means, each of the Copied Bank Records were shipped from Bryan Cave's premises, and what encryption or other protections, if any, were implemented with respect to each or any of the Copied Bank Records, and if so, describe all such protections and the specific records as to which they were used;

(e)    that all Copied Bank Records have been returned to FDIC-Receiver and thereafter removed from Bryan Cave's hardware, servers and systems, and describe the method and means by which that was done.

6.    Enter preliminary and permanent injunctive relief sufficient to protect FDIC-Receiver's interests, including an order:

(a)    enjoining Defendant Bryan Cave, and all persons or entities acting in concert with it, from directly or indirectly:

(1)    Possessing, using, deleting, destroying, modifying, moving, copying or disclosing any of the Copied Bank Records; and

(2)     Obtaining, accessing, retrieving, using, deleting, destroying, modifying, moving, copying or disclosing any of the Copied Bank Records;

(b)     requiring Defendant Bryan Cave and all persons or entities acting in concert with it immediately to deliver to FDIC-Receiver or its counsel any and all originals and copies (paper and/or electronic) of any and all confidential Hillcrest Bank records in their possession or control, including, but not limited to, those containing Confidential Customer Information, Confidential Bank Information, and/or other nonpublic information, and any and all hard drives, disks, electronic storage devices, computer, or other physical media or files that contain any copy, partial or complete, of any such information;

7.     Enter judgment in favor of FDIC-Receiver and against Defendant Bryan Cave for FDIC-Receiver's attorney fees and costs; and

[Remainder of Page Intentionally Left Blank]

8.      Order any such other and further relief as the Court deems just and equitable.

Dated:  November 9, 2010.

SCHIFF HARDIN LLP

By:   _/s/ Ethan H. Cohen_____
     Michael K. Wolensky               Antony S. Burt
     Georgia Bar No. 773255          *(Motion to Appear pro hac vice pending)*
     mwolensky@schiffhardin.com     aburt@schiffhardin.com
     Ethan H. Cohen                   Linda K. Stevens
     Georgia Bar No. 173745          *(Motion to Appear pro hac vice pending)*
     ecohen@schiffhardin.com       lstevens@schiffhardin.com

     One Atlantic Center, Suite 2300    233 S. Wacker Drive
     1201 West Peachtree Street       Chicago, Illinois  60606
     Atlanta, Georgia 30309          Telephone:  (312) 258-5500
     Telephone:  404-437-7000      Facsimile:   (312) 258-5600
     Facsimile:  404-437-7100

            *Attorneys for Plaintiff FDIC-Receiver*

# VERIFICATION

I, Daniel M. Bell, being duly sworn, state that I am employed by the Federal Deposit Insurance Corporation ("FDIC"), as Receiver In Charge for Hillcrest Bank, the FDIC currently serving in its capacity as receiver for Hillcrest Bank ("FDIC-Receiver"— the Plaintiff in this matter), and I hereby verify that the factual statements contained in the foregoing Complaint are true and correct, based on my personal knowledge, information and belief and also based upon information obtained from bank records and the investigation of the circumstances giving rise to this action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November  9 , 2010.                    By: _Daniel M. Bell_____

CH2\9273722.1