UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Hillcrest Bank, <br><br>    Plaintiff, <br><br> v. <br><br> BRYAN CAVE LLP, <br><br>    Defendant. | Civil Action No. <br> 1:10-CV-3666-TCB |

**DECLARATION IN SUPPORT OF PLAINTIFF'S RULE 56(d) RESPONSE
AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND IN
SUPPORT OF MOTION TO COMPLETE DISCOVERY PRIOR TO
<u>SUMMARY JUDGMENT PROCEEDINGS</u>**

I, Mary L. Riche, declare as follows:

1.  I am Counsel with the Plaintiff Federal Deposit Insurance Corporation

("FDIC"), in its capacity as Receiver for Hillcrest Bank ("FDIC-Receiver"), have

been directing and participating in the FDIC-Receiver's investigation into the

removal of the Copied Bank Records from the premises of Hillcrest Bank, have

reviewed many of the documents at issue and have discussed the circumstances

surrounding the removal of the Copied Bank Records with a number of former

Hillcrest employees and FDIC-Receiver employees.  I make this declaration in

support of the FDIC-Receiver's Rule 56(d) Response to the Motion for Summary

Judgment filed by defendant Bryan Cave LLP ("Defendant" or "Bryan Cave") and in support of the FDIC-Receiver's motion to complete discovery prior to further proceedings relating to that summary judgment motion.   I have personal knowledge of the facts set forth herein and would testify competently thereto if called to do so.

2.      It is my understanding, based on the preliminary interviews and other investigation conducted by the FDIC-Receiver that Bryan Cave and its clients, former directors and officers of Hillcrest Bank, caused a broad universe of banking records (the "Copied Bank Records") to be copied and removed from bank premises on the eve of, and in anticipation of the Bank's failure for the purpose of, and to retain those records for purposes of, those former officers' and directors' personal use.

3.      I have reviewed the types of files and information contained within those Copied Bank Records.   They include sensitive and highly confidential regulatory records, as well as sensitive and confidential information regarding the Bank and its customers.   The banking files at issue include, for example, "Suspicious Activity Reports" (also called "SARs") reporting suspected criminal activity, FDIC "Examination Reports" containing confidential regulatory findings, closed deposit account information, as well as the Bank's entire collection of

electronically imaged loan files containing sensitive and non-public, personally identifiable information about bank customers, such as social security numbers, taxpayer identification numbers, account numbers and information, loan applications, personal financial statements, and credit reports (the "Loan Files") -- virtually the Bank's entire universe of electronic files (hereinafter the "Copied Bank Records").

4.     Bryan Cave's motion for summary judgment makes a number of factual assertions that appear to be incorrect and/or incomplete in light of the facts that the FDIC-Receiver expects to be revealed in discovery or that otherwise require discovery.  Without this discovery, the FDIC-Receiver cannot present the facts essential to justify and support its opposition to that summary judgment motion.

5.     By way of specific example, Bryan Cave's motion raises the following questions of material fact as to which discovery is necessary for the FDIC-Receiver to support and justify its opposition to the motion:

(a)     **Did Bryan Cave's clients merely "access" or "examine" the Copied Bank Records?**  Bryan Cave's motion for summary judgment relies on case law addressing a current corporate director's right to "access" or "examine" his corporation's books and records.  However, there appears to be a factual

dispute over whether Bryan Cave merely "accessed" the records, as its summary judgment papers argue, or whether, those records were, in fact, copied, removed from Bank premises and obtained by Bryan Cave from bank personnel who were not its clients, and thereafter retained by Bryan Cave after its clients were no longer officers or directors and after the FDIC-Receiver had demanded their return. The FDIC-Receiver needs to test Bryan Cave's assertions in this regard in discovery in order to determine whether the Kansas statute relating to "examination" of corporate records provides any protection at all for Bryan Cave and its clients.

(b)     **For what purpose did Bryan Cave obtain the Copied Bank records and to what use were those records put?**  The law upon which Bryan Cave relies addresses a corporate director's right to access or examine his corporation's books and records "for a purpose reasonably related to the director's position as a director."   Consequently, in addition to the questions regarding whether Bryan Cave and its clients' conduct can be characterized as mere "access," Bryan Cave's motion raises an additional factual issue regarding the purpose for which it and its clients obtained the Copied Bank Records.  The affidavit in support of Bryan Cave's summary judgment motion is silent on this point.  Bryan Cave's motion papers state that they received the records "in connection with" their representation of the former officers and that it "did not use the Copies or

duplicates for any purpose other than its representation of the Clients" (Def. SMF
at ¶ 18), but this does not address the question of the "purpose" for which it and its
clients obtained the Copied Bank Records and the "use" that was made of those
records.  It is the FDIC-Receiver's position that the retention of the Copied Bank
Records – and *any* use of those records – to further the clients' individual interests
is improper.  Such use also would further expose the Copied Bank Records to the
danger of further disclosure and dissemination.  Written and deposition discovery
is needed to determine the purpose for which Bryan Cave and its clients effected
the copying and removal of the Copied Bank Records, the use to which those
records were put and whether that purpose was reasonably related to the directors'
position.

      (c)    **To what degree was Bryan Cave complicit in, and to what
degree did Bryan Cave direct, the copying and removal from bank premises
of the Copied Bank Records?**  Bryan Cave states only that it "received" the
Copied Bank Records but does not reveal how it came to receive those records.
The FDIC-Receiver has learned that Bryan Cave is using, in connection with its
representation of officers and directors of other failing or failed banks, a standard
or template checklist of the files that such officers and directors should attempt to
obtain from their institutions prior to failure.  A copy of that checklist is attached
hereto as Exhibit A.  Although the FDIC-Receiver's investigation has uncovered

no reason to expect that Bryan Cave varied from this pattern in its representation of the Hillcrest Bank officers and directors, discovery is needed in order to determine the degree to which Bryan Cave was complicit in and directed the efforts to select, copy and remove the Copied Bank Records. The FDIC-Receiver also is entitled to determine the extent to which Bryan Cave was aware that the copying, removal and retention of the Copied Bank Records violated written bank policies and employment contracts of certain of its clients.

(d)    **When, and to what degree, did Bryan Cave know (or should it have known) the types of files, records and information that were included in the Copied Bank Records?** In addition to characterizing its role in obtaining the Copied Bank Records as a mere "recipient" of those records, Bryan Cave's motion asserts that it did not know what types of files and information were contained within those records. But the FDIC-Receiver is entitled to test this assertion. The Bryan Cave checklist indicates that Bryan Cave took on the role of telling its clients and/or other bank personnel what documents should be copied and removed from bank premises. I have reviewed the time entries submitted by Bryan Cave to the Bank in support of its invoices for the legal services rendered to the former officers and directors (Exhibit B), and those time entries reflect a number of communications between Bryan Cave and various bank personnel

regarding the gathering and provision of the Copied Bank Records.[1]  And in the days and weeks after Bryan Cave's receipt of the Copied Bank Records, Bryan Cave has a number of time entries describing its personnel's review and analysis of those records.  Two of the disks containing a portion of the Copied Bank Records are not accessible or readable, presumably because they are passcode protected, and the FDIC-Receiver does not know the passcode(s).  Discovery is needed to determine the full breadth and contents of the Copied Bank Records and, most important, what Bryan Cave knew was contained in the Copied Bank Records both before receipt of those records or prior to the time it rejected the FDIC-Receiver's demand to return the documents.

(e)   **Whether – and when – Bryan Cave knew or should have known that the Copied Bank Records contained SARS?**  A specific example of one type of record as to which there is a factual issue is "Suspicious Activity Reports" or "SARs."   SARs are a very strictly regulated category of banking record, and there is no dispute that it would have been improper for SARs to have been removed from the Bank and provided to the firm.  *See* 12 U.S.C. §208.62(j) and 353.3(g).  Significantly, the Copied Bank Records contain a number of SARs. Bryan Cave's motion raises a factual issue that the FDIC-Receiver is entitled to

---

[1]     Because time records are often considered confidential, those records will be submitted separately to the Court pending agreement and/or the Court's direction as to their submission under seal.

test when it asserts that Bryan Cave "did not request Suspicious Activity Reports ('SARS') from the Clients." (Def., Mem. at 10, fn. 3) Bryan Cave's time records reveal that Bryan Cave communicated with bank personnel throughout the document gathering efforts. It is expected that discovery regarding those communications, and regarding Bryan Cave's use of its standard document gathering checklist will confirm that Bryan Cave provided specific direction and instruction regarding the copying the Copied Bank Records. Given that SARs are included in the Copied Bank Records provided to Bryan Cave, the logical conclusion is that Bryan Cave knew – and perhaps instructed – that SARs should be included in those records.

At the very least, discovery is needed to confirm what Bryan Cave's time records suggest: as a result of its review of the Copied Bank Records after those records had been received by Bryan Cave, Bryan Cave knew that those records contained SARs before it received the FDIC-Receiver's demand for return of those records.

(f) **Under what circumstances did Bryan Cave obtain the Copied Bank Records?** In order to properly respond to the motion for summary judgment, the FDIC-Receiver needs to determine the circumstances under which Bryan Cave received the Copied Bank Records. For example, did Bryan Cave

obtain the Copied Bank Records from its clients?  Or did it receive the documents directly from bank personnel?  And if the latter is true, under what circumstances were bank personnel induced to provide the Copied Bank Records to Bryan Cave?  While Bryan Cave's motion states that it received the Copied Bank Records from its clients, the FDIC-Receiver's investigation to date indicates that other bank personnel (not Bryan Cave clients) gathered, copied, and provided Bryan Cave with those records.  And the FDIC-Receiver has learned that at least one of those bank employees believed that Bryan Cave was acting as legal counsel for the Bank rather than the officers and directors themselves.  She has indicated that she would have viewed the request to disseminate the Copied Bank Records outside of the Bank's premises differently had she been informed that Bryan Cave was representing the officers and directors rather than the bank.  Written and deposition discovery is needed to determine, among other things, whether other bank personnel shared this belief, whether Bryan Cave was aware of this belief, whether the Copied Bank Records were provided to Bryan Cave as a result of this belief, and the nature and extent of Bryan Cave's role, if any, in creating this belief.  Moreover, the FDIC-Receiver understands that Bryan Cave knew that the Bank was represented by legal counsel at the time that Bryan Cave and its clients were working to obtain the Copied Bank Records.  It is relevant, and discovery is needed to determine, whether Bryan Cave made any attempt to obtain the approval

of Bank counsel before causing Bank personnel to copy and remove the Copied

Bank Records and deliver them to Bryan Cave.

(g)   **Did Bryan Cave maintain the Copied Bank Records with**

**"strict confidentiality?"**  Bryan Cave states as uncontested fact that "at all times,

[it] maintained the Copies with strict confidentiality."  *See* Defendant's Statement

of Material Facts as to Which No Genuine Issue Exists to be Tried (hereinafter

"Def's SMF") at ¶18.   But the FDIC-Receiver needs to test this self-serving

statement.   The FDIC-Receiver does know that Bryan Cave gave many of the

Copied Bank Records to a former client, after he had been removed as an officer or

director of Hillcrest Bank and after the FDIC-Receiver had demanded the return of

the documents.   The FDIC-Receiver is entitled to determine the circumstances

under which Bryan Cave gave a former client these bank records.

6.   These factual issues, among other things, must be developed in

discovery in order for FDIC-Receiver to be able to present the facts essential to

justify and support its opposition to Bryan Cave's summary judgment motion.

7.   The discovery, among other things, needed is already under way.

Bryan Cave has served both interrogatories and document requests, and responses

are due on March 24, 2011.   The FDIC-Receiver has served Bryan Cave with

interrogatories, document requests and requests to admit, the responses to which are due on April 4, 2011.

8.     Responses to these discovery requests, and the depositions that are expected to follow written discovery, are needed to answer the factual questions listed above and enable FDIC-Receiver to present a fully supported opposition to Bryan Cave's motion for summary judgment.  More specifically:

(a) The FDIC-Receiver's interrogatories and document requests seek documents and information regarding how and why the Copied Bank Records came to be copied, removed from the Bank, and provided to Bryan Cave, including an identification of all communications between Bryan Cave and Bank personnel regarding that effort, an identification of all bank personnel who were Bryan Cave's clients and an admission that certain personnel were not clients, the purpose for which the records were copied and removed from bank premises, and all facts upon which Bryan Cave bases its assertion that its acquisition of those records was proper.  (*See, e.g.,* Interrogatory nos. 2, 3, 4, and 10  of FDIC-Receiver's First Set of Interrogatories to Bryan Cave, attached hereto as Exhibit C and Request nos. 1, 2, 5, 9, 15, 18 of FDIC-Receiver's Requests to Bryan Cave for the Production of Documents, attached hereto as Exhibit D; FDIC-Receiver's Requests to Admit, attached hereto as Exhibit E, Request nos. 8-12, 14-17)

(b)  The FDIC-Receiver's discovery requests to Bryan Cave also seek information regarding the extent to which Bryan Cave instigated and directed the copying and removal from bank premises of the Copied Bank Records, as well as when and the extent to which Bryan Cave knew or should have known what types of records (e.g., SARs) were being copied and provided to it.  (*See* Exh. C, Interrogatory nos. 3, 4, 5, and 8; Exh. D, Request nos. 6, 7, 15, 16; Ex. E, Requests to Admit nos. 1, 3-7)

(c)  The FDIC-Receiver's discovery requests to Bryan Cave seek information regarding the confidentiality measures, if any, taken by Bryan Cave in connection with its possession of the Copied Bank Records and its transmission of those records to its clients (Exh. D, Request no. 4), as well as the communications, facts and circumstances regarding Bryan Cave's transmission of those records to its clients.  (Exh. D, Request no. 2, 3; Exh. E, Request nos. 9, 13)

(d)  The FDIC-Receiver's interrogatories to Bryan Cave also seek information regarding its claim for return of the attorneys' fees paid to Bryan Cave, and the retention and use of Bryan Cave to represent the individual interests of is officer and director clients, at the Bank's expense and its disclosure of its simultaneous representation of the FDIC on other matters.  (*See, e.g.,* Exh. C, Interrogatory nos. 6, 7, 11, 12, and 13; Exh. D, Request nos. 19, 20, and 21; Exh. E, Request to Admit no. 18)

(e) After receiving responses to these requests, the FDIC-Receiver intends to discover and explore these factual issues by taking depositions of certain Bryan Cave personnel in order to ask them questions regarding, among other things, all of the factual issues listed and described in detail above. The Bryan Cave personnel from which the FDIC-Receiver needs to obtain that factual information are:

W. Bard Brockman:  Bryan Cave's time records indicate that Mr. Brockman communicated with bank personnel about document gathering, and he received and removed from bank premises the Western Digital portable hard drive that contained a vast universe of banking records, including Hillcrest Bank's entire collection of electronic loan files. Mr. Brockman also submitted the affidavit in support of Bryan Cave's motion for summary judgment. The FDIC-Receiver intends to inquire about, among other things, the facts surrounding the copying and transmission of the Copied Bank Records, including the instructions provided to Bank personnel regarding the copying and provision of those records to Bryan Cave, and Bryan Cave's knowledge of the privacy policies at the Bank and the contracts of certain of its Clients to determine whether Bryan Cave's actions complied with such policies and contracts.

Jeannie B. Osborne:  Ms. Osborne has the most time entries relating to the review and indexing of documents. She also appears to be the person who took charge of all of the data, files and hardware delivered by Bryan Cave, including 21 data disks and the unencrypted Western Digital portable hard drive, and the person who gathered Copied Bank Records from within Bryan Cave for dissemination to the client group.

Ken M. Achenbach:  Mr. Achenbach received some of the Copied Bank Records from bank personnel and reviewed some or all of the Copied Bank Records.

Fred L. Sgroi:  Mr. Sgroi received some of the Copied Bank Records from bank personnel, reviewed some or all of that material, and delivered most of the Copied Bank Records (including the unencrypted Western Digital hard drive) to a former Bryan Cave client. Among other things, FDIC-Receiver needs to depose Mr. Sgroi about the factual questions listed above, including

the circumstances surrounding Bryan Cave's transmission and disclosure of the Copied Bank Records to that former client.

(f)  Finally, the FDIC-Receiver needs seek answers to the factual questions listed above from certain of the former Hillcrest Bank officers and directors, and other Bank personnel, who caused the Copied Bank Records to be copied and removed from the Bank's premises and provided to Bryan Cave, including:

G. Richard Degen (formerly CFO & Executive VP of Hillcrest Bank):  Mr. Degen communicated with Ms. Gordon regarding the copying and delivery to Bryan Cave of Copied Bank Records, and Bryan Cave's time records indicate that he communicated with Bryan Cave regarding that effort.  The FDIC-Receiver intends to inquire, among other things, about the factual issues listed above, including the facts surrounding the copying and transmission of the Copied Bank Records and the instructions provided to Bank personnel regarding the copying and provision of those records to Bryan Cave, and about Mr. Degen's knowledge of the privacy policies at the Bank and how Bryan Cave's and his actions complied with such policies.

Brian Schneider (formerly President of Hillcrest Bank):  Mr. Schneider instructed Ms. Gordon regarding the provision to Bryan Cave of the Western Digital portable hard drive – which contained a vast universe of banking records, including Hillcrest Bank's entire collection of electronic loan files containing highly sensitive customer personal identifying information – in unencrypted format.  The FDIC-Receiver intends to inquire, among other things, about the factual issues listed above, including the facts surrounding the copying and transmission of the Copied Bank Records and the instructions provided to Bank personnel regarding the copying and provision of those records to Bryan Cave, and Mr. Schneider's knowledge of the privacy policies at the Bank and how Bryan Cave's and his actions complied with such policies.

Jeffrey F. Wheeler (formerly CEO and Chairman of the BOD of Hillcrest Bank):  Mr. Wheeler instructed Ms. Gordon regarding the copying and delivery to Bryan Cave of Copied Bank Records, and Bryan Cave's time records indicate that he communicated with Bryan Cave regarding that effort.  The FDIC-Receiver intends to inquire, among other things, about the

factual issues listed above, including the facts surrounding the copying and transmission of the Copied Bank Records and the instructions provided to Bank personnel regarding the copying and provision of those records to Bryan Cave, and Mr. Wheeler's knowledge of the privacy policies at the Bank and how Bryan Cave's and his actions complied with such policies.

Timothy Gervy:  (formerly an officer of Hillcrest Bank):  When Bryan Cave packed up and sent the Copied Bank Documents to its "client group," that delivery was made to Mr. Gervy.  The FDIC-Receiver intends to inquire about the factual issues listed above, including the facts surrounding Bryan Cave's transmission of the Copied Bank Records to a former client who was no longer an officer or director of the Bank, as well as Mr. Gervy's knowledge of the privacy policies at the Bank and how Bryan Cave's and his actions complied with such policies.

Jack Fingersh:  Among other things, Mr. Fingersh had a leading role in the retention of Bryan Cave and the scope and nature of its representation. Among other things, FDIC-Receiver needs to depose Mr. Fingersh regarding the factual issues listed above, including communications within the bank and between Bryan Cave and Bank personnel regarding who Bryan Cave was representing.

Non-Client bank personnel:  The FDIC-Receiver expects that it will need further affidavit testimony and/or depositions regarding the factual issues listed above from certain former Hillcrest Bank personnel, such as Charlene Gordon and Tami Britt, who were responsible for copying and transmitting the Copied Bank Records and who communicated with Bryan Cave and other bank personnel regarding that effort, for example regarding the circumstances under which the Copied Bank Records were provided to Bryan Cave, including communications within the bank and between Bryan Cave and Bank personnel regarding who Bryan Cave was representing.

Receipt and review of the documents and information to be produced by Bryan Cave in response to the FDIC-Receiver's written requests might alter or add to this list of the depositions that it expects to take.  But the discovery process is under way, and that process must be completed in order for the FDIC-Receiver to

uncover the answers to the factual issues listed above and develop the material facts necessary for the FDIC-Receiver to respond to Bryan Cave's motion for summary judgment.

9.     The FDIC has issued a position letter stating that the officers and directors of a failing bank may make a request to the FDIC-Receiver for access to needed bank documents, and the FDIC-Receiver will endeavor to accommodate reasonable requests, even in advance of any proceeding, under appropriate safeguards.  A copy of that letter is attached hereto as Exhibit F.   In fact, such focused requests have been granted.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Date: March 23, 2011

Mary L. Riche

CH2\9757675.4

-17-

**EXHIBIT A**

**to**

**Mary L. Riche's March 23, 2011 Declaration in Support of Plaintiff's
Rule 56(d) Response and Opposition to Defendant's Motion for Summary Judgment and
In Support of Motion to Complete Discovery Prior to Summary Judgment Proceedings**

## Document and Information Requests

*Note: this outline assumes existence of a holding company, which may not be applicable, and assumes that three years or more of relevant documents might be collected. The facts and circumstances of each institution's regulatory record will provide guidance as to how many years of materials should be collected. As to all categories, remember to include electronically stored information, including emails and stored documents, as appropriate.*

1.  Corporate Organization.
    - Articles of Incorporation;
    - Bylaws;
    - List of current directors;
    - List of current shareholders;
    - Summary of capital structure (ex., a consolidating balance sheet or any similar document showing all creditors, shareholders, outstanding stock);
    - List of policies currently in place;
        o Statement of asset/liability policy;
        o Statement of interest rate risk policy.
    - Minutes and Board packages for the last three years from Board and Board Committee meetings, including:
        o Compensation;
        o Executive;
        o Audit;
        o Loan;
        o Regulatory Compliance;
        o Asset Liability Committee; and
        o Corporate Governance Committees.
    - Valuation reports for the last three years, if any.

2.  Insurance and Indemnification.
    - Indemnification agreements, if any;
    - D&O Policy, exclusions and related notices and correspondence;
    - Documentation related to relevant existing or threatened civil litigation or administrative proceedings;

6023693/1

- Summary (or complete copy, if readily available) of each director's D&O insurance coverage from his or her primary employer;
- Fidelity bond, proof of claim, if any, and related correspondence.
- Other types of insurance where individuals may arguably have coverage.

3. <u>Lending Activities</u>.

- List of outstanding loans not in compliance with current lending practices and any documents and correspondence regarding any legal lending limit violations in the past three years.

4. <u>Governmental Regulation</u>.

- Reports of Examination, and all regulatory correspondence with any federal or state regulatory agency, for the last three years; and
- Reports filed with, correspondence with, and all documents pertaining to, any significant proceedings before any federal or state regulatory agency for the last three years.

5. <u>Litigation</u>.

- Material litigation matters for the last three years, including those relating to directors or officers and any threatened litigation.

6. <u>Holding Company / Bank Interplay (as applicable)</u>.

- Intercompany agreements between the Holding Company and the Bank; and
- Summary of Holding Company obligations, which may be viewed as having been paid (or being paid) by the Bank (Ex. Long-Term Incentive Plans, SERPs and/or Executive Employment Agreements).

7. <u>Relationships with Insiders</u>.

- Material relationships between the Holding Company or Bank, on the one hand, and any directors or officers, on the other hand (including any relationships from which a director or officer might indirectly benefit).

8. <u>Relationships with Creditors</u>.

- Copy of any documentation related to creditor relationships, such as trust preferred documentation, revolving loan agreements, outstanding credit/loan agreements.

9. <u>Reports</u>.

- Loan review reports;
- Any Audit Reports for the last three years (including related opinions, management letters and management's responses); and
- External consultant work product, including troubled loans, ALL; loan underwriting and review process and procedures, and any other reports regarding adherence to controls and/or policies.

10. <u>Director and Officer Information</u>

Names and addresses of all current officers and directors; names and addresses of any officers and/or directors who terminated relationship with holding company during the last year and the date of termination.

11. <u>Key Documents</u>

Key documents for any areas that have been the subject of regulatory criticism (e.g., any insider transactions; violations of law; loans to one borrower; loan concentrations; Reg. O, etc.)

**Specific Holding Company Documentation: (note: many of these items are gathered with a view to being prepared for a potential bankruptcy filing by the holding company, as applicable).**

1. List of names and addresses of equity security holders and number/kind of shares held (if all we know for some is transfer agent, that is ok).

2. Names and addresses for trustees and holders of trust preferred and copies of any relevant documents.

3. List of names and address for all creditors (designating type of claim--e.g., secured, unsecured).

4. Income (loss) from operation of business - year to date and for the last 2 years.

5. Payments to all creditors made within the last 90 days. Check registers and bank statements are good sources for this information.

6. Payments to insider (directors, officers, shareholders, etc.) creditors made within the last year.

7. Details of any transfer of the company's assets in the last 2 years.

8. Information about any pending or threatened lawsuits, administrative proceedings, etc.

9. Information about all bank accounts (open and closed within the last year).

10. Bookkeepers and auditors for the last 2 years who (a) kept or supervised bookkeepers, (b) prepared financial statements, or (c) have possession of books and records.

11. Detail about all accounts receivable/accounts payable.

12.  Description and copies of all contracts and leases, if any.

13.  Name, address, debt, and other information about co-debtors or guarantors of the company's debt.

14.  List of all payments made to insiders during the last year (compensation, bonuses, loans, stock redemptions, options exercised, etc.)

15.  List of any assets and liabilities as identified on the balance sheet, supported by the appropriate subsidiary ledgers and related documents. .

16.  Copies of current financial statements for holding company only.

17.  Information on any employee benefit plans, retirement plans, 401k plans and the like.

18.  To the extent not otherwise collected above, copies of all base financial documents for the Holding Company, including bank statements, check registers, ledgers and the like.

# EXHIBIT B

**to**

**Mary L. Riche's March 23, 2011 Declaration in Support of Plaintiff's
Rule 56(d) Response and Opposition to Defendant's Motion for Summary Judgment and
In Support of Motion to Complete Discovery Prior to Summary Judgment Proceedings**


Bryan Cave Invoices for Legal Services:  A copy will be provided to the Court separately.

**EXHIBIT C**

to

**Mary L. Riche's March 23, 2011 Declaration in Support of Plaintiff's
Rule 56(d) Response and Opposition to Defendant's Motion for Summary Judgment and
In Support of Motion to Complete Discovery Prior to Summary Judgment Proceedings**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Hillcrest Bank,**<br><br>          **Plaintiff,**<br><br>vs.<br><br>**BRYAN CAVE LLP,**<br><br>          **Defendant.** | **Civil Action No. 1:10-CV-3666-TCB** |

## FDIC-RECEIVER'S FIRST SET OF
## INTERROGATORIES TO BRYAN CAVE

Plaintiff Federal Deposit Insurance Corporation, in its capacity as receiver for Hillcrest Bank ("FDIC-Receiver") and pursuant to Federal Rule of Civil Procedure 33, hereby requests that Bryan Cave LLP ("Bryan Cave") respond to these interrogatories in writing within thirty (30) days in accordance with the Instructions and Definitions set forth herein.

## INSTRUCTIONS

A.     Each interrogatory herein shall be construed separately, and no interrogatory shall be used to construe any other interrogatory more narrowly than it otherwise would be construed.

B.     If, after exercising due diligence to secure the information, you cannot answer any of the interrogatories in full, please so state and answer to the extent

possible, specifying your inability to answer the remainder and your efforts to secure the information, and stating whatever information you have concerning the unanswered portions.  If your response is qualified in any way, please set forth the details of such qualification.

C.     If you wish to assert attorney-client privilege, attorney work product protection, or any other privilege as to any interrogatory, in whole or in part, then please identify the information as to which privilege is claimed in a manner such that the Court may determine whether such information is entitled to be accorded privileged status.

D.     These interrogatories are deemed to be continuing to the extent permitted by Federal Rule of Civil Procedure 26(e), so as to require Plaintiff to supplement the response to any interrogatory as to which it obtains additional knowledge or information relating in any way to these interrogatories between the time the answers are served and the time of trial.

<u>DEFINITIONS</u>

As used herein, the terms listed below are defined as follows:

A.     The term "document" is used in its customary broad sense to include all written, recorded, computerized, or electronically stored information, however produced or reproduced, including, without limitation: databases, e-mail messages, instant messages, reports, computer printouts, facsimiles, forms, sound recordings,

lists, memoranda, notes, handwritten materials, diagrams, drawings, sketches, graphs, charts, correspondence, telegrams, schedules, photographs, films, videotapes, agreements, contracts, meeting minutes, or any other tangible thing or writing within the scope of Federal Rule of Civil Procedure 34(a)(1)(A). The term "document" also includes drafts of any of the foregoing and copies of any of the foregoing to the extent that any copy differs from the original.

B.      The terms "Plaintiff," "Plaintiff-Receiver," and "FDIC-Receiver" are intended to designate the Federal Deposit Insurance Corporation in its capacity as Receiver for Hillcrest Bank and any person or representative acting or purporting to act on its behalf.

C.      The terms "Bryan Cave," "Defendant," and "you" mean the law firm of Bryan Cave LLP and any person or representative acting or purporting to act on its behalf.

D.      The term "representative" includes, without limitation, any advisor, expert, consultant, attorney, employee, or agent acting on a person's behalf.

E.      The term "person" includes, without limitation, any individual, natural person, firm, partnership, corporation, proprietorship, association, governmental body, agency, department, branch, division, or any other organization or entity.

F.      The term "regarding" means having any relationship or connection to, concerning, supporting, commenting on, responding to, containing, mentioning,

evidencing, showing, memorializing, describing, analyzing, reflecting, pertaining

to, relating to, comprising, constituting, or otherwise establishing any reasonable,

logical, or causal connection.

     G.    "Copied Bank Records" means the records copied by Hillcrest Bank

personnel (including but not limited to the Clients) and supplied to Bryan Cave

during the period of time from Bryan Cave's engagement by the Clients in late

September of 2010 through October 22, 2010, including but not limited to on the

storage disks (CDs and/or DVDs) and a "Western Digital" hard drive referred to in

paragraphs 25 and 26 of Bryan Cave's Answer to the Verified Complaint.

     H.    The term "identify" means, depending on its use:

1.    For each request to identify an action, provide the details of the action taken, the person(s) involved in each action, the date(s) of each action, and the results for each action.

2.    For each request to identify a person, state his or her full name, current or last known address, current or last known phone number, occupation, and job title.

3.    For each request to identify a document, provide the author, recipients, and subject matter (or in the alternative, provide a copy of the document).

4.    For each request to identify a communication:

    (a)    If written, provide the name(s) of the person(s) involved, the date(s) of the communication, and the content of the communication (or in the alternative, provide a copy of the written communication); and

    (b)    If oral, provide the name(s) of the person(s) involved, the date(s) of the communication, the content of the

communication, and identify any document reflecting the communication (or in the alternative, provide a copy of the document).

I.     The term "date" means the exact day, month, and year, if known, or the best approximation, including relationship to other events.

The terms "and" and "or" shall be construed both conjunctively and disjunctively. The plural of any word includes the singular, and the singular includes the plural. The masculine gender of any word includes the feminine and the neuter, and the feminine of any word includes the masculine and the neuter.  The past tense of any verb includes the present tense, and the present tense includes the past tense.

J.     The term "Clients," "Bryan Cave Clients," and/or "Clients of Bryan Cave" means any or all of the persons who were officers, directors or other employees of Hillcrest Bank and for whom Bryan Cave was engaged to act as counsel in or after September of 2010 and specifically includes Jeffrey Wheeler, Scott Asner, Irwin Blitt, R.J. Campbell, Jack Fingersh, George Lieberman, Brian Schneider, and Gerald White, all of whom Bryan Cave has stated were represented by Bryan Cave from September 24, 2010, through November 5, 2010.

K.     The terms "and" and "or" shall be construed both conjunctively and disjunctively.  The plural of any word includes the singular, and the singular includes the plural.  The masculine gender of any word includes the feminine and the neuter, and the feminine of any word includes the masculine and the neuter.

-5-

The past tense of any verb includes the present tense, and the present tense includes the past tense.

L.    The "Rouse Law Firm" means Rouse, Hendricks, German & May PC, which is or has been located at 1010 Walnut Street, Suite 400, Kansas City, MO 64106-2147 and anyone acting on its behalf.

M.    "Hillcrest Bank" means the FDIC-insured bank that was located in Overland Park, Kansas, was regulated by the Kansas Office of the State Bank Commissioner and the Federal Deposition Insurance Corporation, and for which a receiver was appointed on October 22, 2010.

## INTERROGATORIES

1.    Please identify every person who provided information regarding, or otherwise participated in composing, your response to any of interrogatories or document requests served by FDIC-Receiver and specify for each such person the particular interrogatories and/or document requests and the information and/or participation provided by the identified person.

2.    Identify each current or former officer, director or other employee or representative of Hillcrest Bank who became a Bryan Cave Client and for each such person state the dates on which Bryan Cave's engagement on behalf of that client began and ended.

3.      Identify and describe each and every communication to which Bryan Cave was a party regarding the contents of any of the Copied Bank Records, the copying of any of the Copied Bank Records, and/or the provision of any of the Copied Bank Records to Bryan Cave, including but not limited to all instructions, requests, and lists of documents or types of documents, and all communications between Bryan Cave on the one hand, and Charlene Gordon, Tami Britt, Richard Degen, anyone acting on behalf of Hillcrest Bank, any of Bryan Cave's Clients, or anyone who would become one of its Clients, on the other hand.

4.      For each communication identified in response to the foregoing interrogatory, identify when it occurred, how, the participants, and identify all documents containing or regarding that communication.

5.      Describe Bryan Cave's representation of its Clients, including the scope and nature of the engagement, and the services provided by Bryan Cave.

6.      State the amount of fees and costs billed by Bryan Cave in connection with its engagement to represent the Clients.

7.      State the amount of fees and costs collected by Bryan Cave in connection with its engagement to represent the Clients and identify every person or entity who made any payment to Bryan Cave for such fees and costs.

8.      Identify and describe, in detail, the Copied Bank Records received by Bryan Cave from any of its Clients, including but not limited to the documents and

materials that Bryan Cave indicates in its invoice nos. 9905888, 9907401,  and

9909923 were "reviewed," "analyzed," "organized" and/or "summarized" by

Bryan Cave personnel in September and/or October of 2010, stating for each

document or category of documents when it was received and reviewed by Bryan

Cave.

9.     Identify each and every person from whom Bryan Cave expects to

elicit or offer expert or other opinion testimony in connection with this matter, and

describe in detail their opinions, and the bases for those opinions, that person's

qualifications to provide the opinion(s).

10.     State whether Bryan Cave asserts that it and its Clients were entitled

to copy the Copied Bank Records and remove those copies from Hillcrest Bank

premises in the weeks preceding the Bank's failure, and to retain those copies after

failure of the Bank and after the FDIC-Receiver's demand that those records be

turned over to the FDIC-Receiver, for the claimed purpose of retaining those

documents for future use in litigation or administrative proceedings that might be

initiated against one or more Bryan Cave Clients in the future and, if so, state the

factual and legal bases for this assertion.

11.     Identify and describe in detail all communications between Bryan

Cave and any member of the Hillcrest Bank Board of Directors regarding whether

any actual or potential "regulatory" issues and/or questions might be raised by

Bryan Cave's engagement by the Clients, including but not limited to the communications referenced in the following language appearing in the minutes of the September 29, 2010 meeting of the Hillcrest Bank Board of Directors in connection with the proposed engagement of Bryan Cave: "Mr. Asner asked if there were any regulatory issues that needed to be considered. Mr. Jack Fingersh reported that he had reviewed these questions with the firm, which is experienced in this type of representation, and had been assured that there were no issues, that this engagement was in the normal course of business."

12.   Identify and describe all "assurances" provided by Bryan Cave to any member of the Hillcrest Bank board of directors with regard to its engagement by the Clients, including but not limited to those described in the board of directors meeting minutes referenced in the preceding interrogatory.

13.   State all factual and legal bases for Bryan Cave's position that it was proper and lawful for Hillcrest Bank to pay its fees and costs in connection with its engagement by the Clients.

14.   With respect to your assertion that the complaint herein "articulates for the first time the policy position of the Federal Deposit Insurance Corporation ("FDIC")," please describe what you contend the FDIC's prior policy position had been and what you content the change to be, including but not limited to

identifying all documents that support or describe what you assert to be the change

or the prior policy position of the FDIC.

Dated:  February 28, 2011.


SCHIFF HARDIN LLP

By: _____

Michael K. Wolensky                        Antony S. Burt
Georgia Bar No. 773255                     (*Motion to Appear pro hac vice pending*)
mwolensky@schiffhardin.com                 aburt@schiffhardin.com
Ethan H. Cohen                             Linda K. Stevens
Georgia Bar No. 173745                     (*Motion to Appear pro hac vice pending*)
ecohen@schiffhardin.com                    lstevens@schiffhardin.com

One Atlantic Center, Suite 2300            233 S. Wacker Drive
1201 West Peachtree Street                 Chicago, Illinois  60606
Atlanta, Georgia 30309                     Telephone:  (312) 258-5500
Telephone:  404-437-7000                   Facsimile:  (312) 258-5600
Facsimile:  404-437-7100

*Attorneys for Plaintiff FDIC-Receiver*

CH2\9627781.2

-10-

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Hillcrest Bank,** | |
| **Plaintiff,** | **Civil Action No. 1:10-CV-3666-TCB** |
| **vs.** | |
| **BRYAN CAVE LLP,** | |
| **Defendant.** | |

## CERTIFICATE OF SERVICE OF DISCOVERY

I hereby certify that true and correct copies of **FDIC-Receivers First Requests for the Production of Documents, First Set of Interrogatories and First Set of Requests to Admit to Bryan Cave** were served upon the following counsel of record by email, pursuant to written consent under Federal Rule of Civil Procedure 5(b)(2)(E):

> Daniel S. Reinhardt
> Jaime L. Theriot
> TROUTMAN SANDERS LLP
> daniel.reinhardt@troutmansanders.com
> jaime.theriot@troutmansanders.com

Respectfully submitted this 28th day of February, 2011.

SCHIFF HARDIN LLP

By:

Linda K. Stevens

# EXHIBIT D

**to**

**Mary L. Riche's March 23, 2011 Declaration in Support of Plaintiff's
Rule 56(d) Response and Opposition to Defendant's Motion for Summary Judgment and
In Support of Motion to Complete Discovery Prior to Summary Judgment Proceedings**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Hillcrest Bank,**<br><br>       **Plaintiff,**<br><br>**vs.**<br><br>**BRYAN CAVE LLP,**<br><br>       **Defendant.** | **Civil Action No. 1:10-CV-3666-TCB** |

## FDIC-RECEIVER'S REQUESTS TO BRYAN CAVE
## FOR THE PRODUCTION OF DOCUMENTS

Plaintiff Federal Deposit Insurance Corporation, in its capacity as receiver for Hillcrest Bank ("FDIC-Receiver") and pursuant to Federal Rule of Civil Procedure 34, hereby requests that Bryan Cave LLP ("Bryan Cave") respond to these requests in writing and produce the requested documents within thirty (30) days in accordance with the Instructions and Definitions set forth herein.

## INSTRUCTIONS

A.      In responding to the document requests, please furnish all documents within your possession, custody, or control, regardless of location and regardless of whether such information is held by you or your representatives.

B.     Each document request herein shall be construed separately, and no document request shall be used to construe any other document request more narrowly than it otherwise would be construed.

C.     If, after exercising due diligence to identify and produce the documents, you cannot respond in full to any of the following document requests, please so state and answer to the extent possible, specifying your inability to answer the remainder.  If your response is qualified in any way, please set forth the details of such qualification.

D.     If you wish to assert attorney-client privilege, attorney work product protection, or any other privilege as to any document request, in whole or in part, then please identify each document as to which privilege is claimed in a manner such that the Court may determine whether such document is entitled to be accorded privileged status.  Specifically, please state (1) the document's sender or author, recipient, date, and the type of document (e.g., letter, memorandum, etc.); (2) the document's general subject matter; and (3) the basis upon which you claim a privilege.

E.     If any document is not produced in its entirety or is produced in redacted form, indicate any and all omissions or redactions on the document.  State with particularity the reason(s) that the document was omitted or redacted, and, to the extent possible, describe the content of the document.  If privilege or work

product protection is the basis for any redaction or omission, please indicate, where applicable, all information requested in Instruction D above.

F.      As required by Federal Rule of Civil Procedure 34(b)(2)(E)(i), please produce the documents either as they are kept in the usual course of business or organized and labeled to correspond to the specific request(s) to which the documents are responsive.  File folders, labels, and indices identifying documents requested herein shall be produced intact with such documents.  Documents attached to each other shall not be separated.

G.      (i) FDIC-Receiver proposes that the parties agree that production of all responsive electronic documents in native format (Instruction G), which is both unwieldy and unnecessary in this matter and proposes that the parties agree to produce paper documents (or if it advances the ease of production) electronic files in concordance load files with TIFF images and agree to later produce in native format whatever documents end up having relevant metadata.  (ii) If you do not agree with this proposal, FDIC-Receiver, instructs, pursuant to Federal Rule of Civil Procedure 34(b)(1)(C), that all responsive documents that are stored electronically, including, without limitation, e-mails, word processing documents, and computer databases, should not be printed and produced as a paper copy, or scanned and produced as a Tagged Image File ("TIF") or Portable Document Format ("PDF"), but rather shall be produced electronically in their native file

format (defined as the electronic format in which such documents are ordinarily created, viewed, modified, and maintained) and in a manner that preserves all metadata, and that e-mails be produced as Personal Storage Table ("PST") files.  If you both reject the FDIC-Receiver's proposal in subparagraph (i) hereof and also object to providing responsive electronically stored information in the format specified in subparagraph (ii) hereof, please specify, pursuant to Federal Rule of Civil Procedure 34(b)(2)(D), the format that you intend to use and why producing the documents in the requested format is not feasible.

H.     These requests are deemed to be continuing to the extent permitted by Federal Rule of Civil Procedure 26(e).  If at any later date Plaintiff obtains any additional documents different from those produced in response to these document requests, Plaintiff shall promptly notify Defendant's counsel of the existence of such documents and produce them within a reasonable time.

I.     The production, inspection, and copying of the documents, and all acts necessarily related thereto, shall take place at the offices of Schiff Hardin LLP, One Atlantic Center, Suite 2300, Atlanta, Georgia, 30309, within thirty (30) days of the date of service hereof, or at such other date and place as counsel for the parties may agree, and continuing from day to day thereafter until such production, inspection, copying, and related activities are completed.

J.      Unless otherwise stated therein, each of these requests seeks documents that were created, provided, sent or received on or after July 1, 2010.

## DEFINITIONS

As used herein, the terms listed below are defined as follows:

A.      The term "document" is used in its customary broad sense to include all written, recorded, computerized, or electronically stored information, however produced or reproduced, including, without limitation: databases, e-mail messages, instant messages, reports, computer printouts, facsimiles, forms, sound recordings, lists, memoranda, notes, handwritten materials, diagrams, drawings, sketches, graphs, charts, correspondence, telegrams, schedules, photographs, films, videotapes, agreements, contracts, meeting minutes, or any other tangible thing or writing within the scope of Federal Rule of Civil Procedure 34(a)(1)(A).  The term "document" also includes drafts of any of the foregoing and copies of any of the foregoing to the extent that any copy differs from the original.

B.      The terms "Plaintiff," "FDIC-Receiver," and "Plaintiff-Receiver," are intended to designate Federal Deposit Insurance Corporation in its capacity as Receiver for Hillcrest bank and any person or representative acting or purporting to act on its behalf.

C.     The terms "Bryan Cave," Defendant, and "you" mean the law firm of Bryan Cave LLP and any person or representative acting or purporting to act on its behalf.

D.     The term "representative" includes, without limitation, any advisor, expert, consultant, attorney, employee, or agent acting on a person's behalf.

E.     The term "person" includes, without limitation, any individual, natural person, firm, partnership, corporation, proprietorship, association, governmental body, agency, department, branch, division, or any other organization or entity.

F.     The term "regarding" means having any relationship or connection to, concerning, supporting, commenting on, responding to, containing, mentioning, evidencing, showing, memorializing, describing, analyzing, reflecting, pertaining to, relating to, comprising, constituting, or otherwise establishing any reasonable, logical, or causal connection.

G.     The term "Clients," "Bryan Cave Clients," and/or "Clients of Bryan Cave" means any or all of the persons who were officers, directors or other employees of Hillcrest Bank and for whom Bryan Cave was engaged to act as counsel in or after September of 2010 and specifically includes Jeffrey Wheeler, Scott Asner, Irwin Blitt, R.J. Campbell, Jack Fingersh, George Lieberman, Brian Schneider, and Gerald White, all of whom Bryan Cave has stated were represented by Bryan Cave from September 24, 2010, through November 5, 2010.

H.     "Copied Bank Records" means the records copied by Hillcrest Bank personnel (including but not limited to the Clients) and supplied to Bryan Cave during the period of time from Bryan Cave's engagement by the Clients in late September of 2010 through October 22, 2010, including but not limited to on the storage disks (CDs and/or DVDs) and a "Western Digital" hard drive referred to in paragraphs 25 and 26 of Bryan Cave's Answer to the Verified Complaint.

I.     The terms "and" and "or" shall be construed both conjunctively and disjunctively.  The plural of any word includes the singular, and the singular includes the plural.  The masculine gender of any word includes the feminine and the neuter, and the feminine of any word includes the masculine and the neuter. The past tense of any verb includes the present tense, and the present tense includes the past tense.

J.     The "Rouse Law Firm" means Rouse, Hendricks, German & May PC, which is or has been located at 1010 Walnut Street, Suite 400, Kansas City, MO 64106-2147 and anyone acting on its behalf.

K.     "Hillcrest Bank" means the FDIC-insured bank that was located in Overland Park, Kansas, was regulated by the Kansas Office of the State Bank Commissioner and the Federal Deposition Insurance Corporation, and for which a receiver was appointed on October 22, 2010.

## REQUESTS

1.      All documents regarding the copying or provision to Bryan Cave of any Copied Bank Records, including but not limited to all documents regarding any communication between Bryan Cave, on the one hand, and Charlene Gordon, Tami Britt, Richard Degen, any other Hillcrest Bank personnel, any of Bryan Cave's Clients, or anyone who would become a Bryan Cave Client, on the other hand.

2.      All documents regarding any or all of the Copied Bank Records, including but not limited to all documents regarding their contents, to their possible or actual gathering, copying, possession, transmission and/or return, and/or to the reasons or purpose for their copying and/or transmission to Bryan Cave.

3.      All documents regarding the Rouse Law Firm's engagement to represent any current or former Bryan Cave Client and/or its actual or potential receipt, possession, or handling of any of the Copied Bank Records.

4.      All documents relating to any measure, step or safeguard to maintain the security or confidentiality of any of the Copied Bank Records during their transmission to or from, or possession by, Bryan Cave or any of its Clients.

5.      All documents regarding communications (whether via email, phone, letter, meeting or other in-person conversation, or otherwise) between Bryan Cave on the one hand, and Hillcrest Bank or any employee, officer, board member, or

representative of Hillcrest Bank on the other hand (whether or not that employee or representative was acting on behalf of Hillcrest Bank), including but not limited to all letters, emails, memoranda, and notes of meetings and/or conversations.

6.     All documents that were provided to any employee, officer, board member or representative of Hillcrest Bank in connection with or regarding the possible or actual engagement of Bryan Cave, including but not limited to marketing materials, capability statements, and descriptions of qualifications, personnel or services.

7.     All documents regarding Bryan Cave's engagement to represent any officer, director or employee of Hillcrest Bank, including but not limited to all documents regarding the retention or engagement of Bryan Cave; the services provided by Bryan Cave pursuant to that engagement; the amount of fees charged for those services; which person or entity should, would or did pay any of those fees; the termination or end of that engagement; and/or the provision, receipt, review, analysis and/or return of whatever documents and data were provided to Bryan Cave in connection with that engagement.

8.     All agreements signed by any Bryan Cave Client relating to his or her responsibilities for or duties to Hillcrest Bank, or any Hillcrest Bank client.

9.     All documents making reference to or otherwise regarding the possibility, likelihood, assumption, or prediction that Hillcrest Bank might, would, or could: fail, go into receivership, and/or be subject to an enforcement action.

10.     All documents supporting or otherwise regarding the assertion that the FDIC or FDIC-Receiver's position in this case is intended to deprive, or will deprive, Bryan Cave's Clients of effective legal representation or advice or of the ability to defend themselves in any future legal action.

11.     All documents establishing or regarding the "past practice and industry understanding" referred to in Bryan Cave's First Defense to the Verified Complaint.

12.     All documents supporting or otherwise regarding Bryan Cave's Fourth Defense to the Verified Complaint that the FDIC-Receiver lacks standing to assert any or all of the claims stated in the Amended Complaint.

13.     All declarations, affidavits and other statements made by anyone in connection with this matter, whether written, transcribed, or otherwise recorded.

14.     All documents consulted, relied upon, or referred to in the preparation of Bryan Cave's responses to interrogatories.

15.     All documents from, to, or by Hillcrest Bank, or any Hillcrest Bank employee, officer or director, regarding the copying, retention, possession of bank file, record, or other data compilation, including but not limited to the

"memorandum from D. Degan regarding document preservation" referred to in a Bryan Cave time entry for 4.20 hours by W.B. Brockman on 10-6-10 in its invoice no. 9905888; the "memoranda from C. Gordon" and the two "memorand[a] to C. Gordon" referred to in a Bryan Cave time entry for 10-8-10 for 7.50 hours by W.B. Brockman in its invoice no. 9907401; and "memorandum from C. Gordon regarding document preservation issues" referred to in the Bryan Cave time entry for 11.40 hours on 10-13-10 by W.B. Brockman in Bryan Cave invoice no. 9907401

16.     All documents listing, describing or otherwise regarding any documents, files or records sought and/or received by Bryan Cave from any of its Clients, including but not limited to all memoranda, lists, inventories or indices, and including but not limited to the "document list" or lists referenced in the Bryan Cave time entries by J.B. Osborne for 7.60 hours on 9-27-10 and 1.40 hours on 9-28-10 in its invoice no. 9905888, the "document index" referenced in the Bryan Cave time entry of 5.80 hours on 10-6-10 by J.B. Osborne, the "document list" referenced in the Bryan Cave time entry of 3.2 hours on 10-7-10 for J.B. Osborne, the "document list" referred to in the Bryan Cave time entry for 3.2 hours by J.B. Osborne on 10-7-10 and the "memorandum from K.M. Achenbach re key documents" referred to in the Bryan Cave time entry for 4.10 hours on 10-7-10 by W.B. Brockman in Bryan Cave invoice no. 9905888.

-11-

17.    For any expert who Defendant may call or designate in this case, all documents (including, without limitation, correspondence, e-mails, or memoranda between Defendant and the expert) regarding that expert's opinion or regarding any or all of the facts, data, or assumptions upon which the expert's opinions are based; all documents referred to or relied upon by the expert in forming his or her opinions; all documents and exhibits that the expert intends to use to summarize or support these opinions; all documents regarding the expert's qualifications, including his or her most recent *curriculum vitae*; and all contracts with the expert and documents regarding the rate and amount of compensation paid to such expert.

18.    All documents supporting or otherwise regarding Bryan Cave's assertion that it and its Clients were entitled to copy the Copied Bank Records and remove those copies from Hillcrest Bank premises in the weeks preceding the Bank's failure, and to retain those copies after failure of the Bank and after the FDIC-Receiver's demand that those records be turned over to the FDIC-Receiver, for the purpose of retaining those documents for future use in litigation or administrative proceedings that might be initiated against one or more Bryan Cave Clients in the future.

19.    All documents supporting or otherwise regarding any part of the contents or subject matter of the following statements made in the minutes of the September 29, 2010 meeting of the Hillcrest Bank Board of Directors in

connection with the proposed engagement of Bryan Cave: "Mr. Asner asked if there were any regulatory issues that needed to be considered. Mr. Jack Fingersh reported that he had reviewed these questions with the firm, which is experienced in this type of representation, and had been assured that there were no issues, that this engagement was in the normal course of business."

20.    All documents supporting, stating or otherwise regarding Bryan Cave's position that it was proper and lawful for Hillcrest Bank to pay its fees and costs in connection with its engagement by the Clients.

21.    All documents regarding any potential, actual, or asserted conflict of interest in Bryan Cave's representation of its Clients adverse to the FDIC in light of its representation of the FDIC in other matters, including but not limited to: documents regarding all conflict checks performed within Bryan Cave with regard to its representation of its Clients, all documents regarding all screens or other insulation measures discussed or undertaken within Bryan Cave with regard to its representation of its Clients, and all disclosures and other communications within, by or to Bryan Cave regarding any potential, actual or asserted conflict of interest, or any actual or potential screen or other insulation, in connection with representation of the Clients.

Dated:  February 28, 2011.

SCHIFF HARDIN LLP

By: _____

Michael K. Wolensky
Georgia Bar No. 773255
mwolensky@schiffhardin.com
Ethan H. Cohen
Georgia Bar No. 173745
ecohen@schiffhardin.com

One Atlantic Center, Suite 2300
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone:  404-437-7000
Facsimile:  404-437-7100

Antony S. Burt
(*Motion to Appear pro hac vice pending*)
aburt@schiffhardin.com
Linda K. Stevens
(*Motion to Appear pro hac vice pending*)
lstevens@schiffhardin.com

233 S. Wacker Drive
Chicago, Illinois  60606
Telephone:  (312) 258-5500
Facsimile:  (312) 258-5600

*Attorneys for Plaintiff FDIC-Receiver*

39671-0000
CH2\9580609.2

-14-

# EXHIBIT E

**to**

**Mary L. Riche's March 23, 2011 Declaration in Support of Plaintiff's
Rule 56(d) Response and Opposition to Defendant's Motion for Summary Judgment and
In Support of Motion to Complete Discovery Prior to Summary Judgment Proceedings**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
Hillcrest Bank,**

        **Plaintiff,**

vs.

**BRYAN CAVE LLP,**

        **Defendant.**

**Civil Action No. 1:10-CV-3666-
TCB**

## FDIC-RECEIVER'S FIRST SET OF
## <u>REQUESTS TO ADMIT TO BRYAN CAVE</u>

Plaintiff Federal Deposit Insurance Corporation, in its capacity as receiver for Hillcrest Bank ("FDIC-Receiver") and pursuant to Federal Rule of Civil Procedure 36, hereby requests that Bryan Cave LLP ("Bryan Cave") admit the following within thirty (30) days.

## <u>DEFINITIONS</u>

As used herein, the terms listed below are defined as follows:

A.    The terms "Plaintiff," "FDIC-Receiver," and "Plaintiff-Receiver," are intended to designate Federal Deposit Insurance Corporation in its capacity as Receiver for Hillcrest Bank and any person or representative acting or purporting to act on its behalf.

B.      The terms "Bryan Cave," "Defendant," and "you" mean the law firm of Bryan Cave LLP and any person or representative acting or purporting to act on its behalf.

C.      The term "Clients," "Bryan Cave Clients," and/or "Clients of Bryan Cave" means any or all of the persons who were officers, directors or other employees of Hillcrest Bank and for whom Bryan Cave was engaged to act as counsel in or after September of 2010 and specifically includes Jeffrey Wheeler, Scott Asner, Irwin Blitt, R.J. Campbell, Jack Fingersh, George Lieberman, Brian Schneider, and Gerald White, all of whom Bryan Cave has stated were represented by Bryan Cave from September 24, 2010, through November 5, 2010.

D.      "Copied Bank Records" means the records copied by Hillcrest Bank personnel (including but not limited to the Clients) and supplied to Bryan Cave during the period of time from Bryan Cave's engagement by the Clients in late September of 2010 through October 22, 2010, including but not limited to on the storage disks (CDs and/or DVDs) and a "Western Digital" hard drive referred to in paragraphs 25 and 26 of Bryan Cave's Answer to the Verified Complaint.

E.      The terms "and" and "or" shall be construed both conjunctively and disjunctively.  The plural of any word includes the singular, and the singular includes the plural.  The masculine gender of any word includes the feminine and the neuter, and the feminine of any word includes the masculine and the neuter.

The past tense of any verb includes the present tense, and the present tense includes the past tense.

F.    "Personally Identifiable Information" includes social security numbers, taxpayer identification numbers, account information, loan applications, personal financial statements, and/or credit reports of customers and guarantors.

G.    "Hillcrest Bank" means the FDIC-insured bank that was located in Overland Park, Kansas, was regulated by the Kansas Office of the State Bank Commissioner and the Federal Deposit Insurance Corporation, and for which a receiver was appointed on October 22, 2010.

## REQUESTS TO ADMIT

1.    In connection with Bryan Cave's engagement by the Clients in September of 2010 and prior to the appointment of a receiver for Hillcrest Bank on October 22, 2010, Bryan Cave provided its Clients with instructions or one or more lists (either verbally or in writing) regarding documents and/or data that one or more of its Clients should have copied and provided, or should consider having copied and/or provided, to Bryan Cave.

2.    In connection with Bryan Cave's engagement by the Clients in September of 2010 and prior to the appointment of a receiver for Hillcrest Bank on October 22, 2010, Bryan Cave received the Copied Bank Records.

3.      At the time that Bryan Cave received the Copied Bank Records from its Clients, it was aware that the Copied Bank Records included copied records of Hillcrest Bank.

4.      At the time that Bryan Cave received the Copied Bank Records from its Clients, it was aware that the Copied Bank Records included a copy of the entire email boxes of certain employees of Hillcrest Bank, as those email boxes existed on the date of copying.

5.      At the time that Bryan Cave received the Copied Bank Records from its Clients, it was aware that the Copied Bank Records included copied Hillcrest Bank loan files.

6.      At the time that Bryan Cave received the Copied Bank Records from its Clients, it was aware that the Copied Bank Records included reports of FDIC examinations.

7.      At the time that Bryan Cave received the Copied Bank Records from its Clients, it was aware that the Copied Bank Records included at least some Personally Identifiable Information of at least some Hillcrest Bank customers.

8.      Bryan Cave received the Copied Bank Records from its Clients for the stated purpose of maintaining those documents for future use in the defense of some or all of the Bryan Cave Clients in litigation or administrative proceedings

that might be filed against them regarding their role or performance as officers and/or directors of Hillcrest Bank.

9.     After October 22, 2010, none of Bryan Cave's Clients held any position with Hillcrest Bank.

10.     After October 22, 2010, the Copied Bank Records were not retained by Bryan Cave and/or its Clients for a purpose reasonably related to any Bryan Cave Client's position as a director.

11.     On October 27, 2010, the FDIC-Receiver demanded that Bryan Cave turn over the Copied Bank Records to the FDIC-Receiver.

12.     Bryan Cave failed to turn over the Copied Bank Records to the FDIC-Receiver.

13.     Bryan Cave turned over the Copied Bank Records to one or more of its Clients in the first week of November, 2010.

14.     Tami Britt was not one of the Bryan Cave clients.

15.     Charlene Gordon was not one of the Bryan Cave clients.

16.     G. Richard Degen was not one of the Bryan Cave clients.

17.     Bryan Cave's communications with Tami Britt, Charlene Gordon, and G. Richard Degen are not shielded from discovery by the attorney-client privilege.

18.     Hillcrest Bank paid Bryan Cave's attorneys fees and costs in connection with Bryan Cave's representation of the Clients.

Dated:  February 28, 2011.


SCHIFF HARDIN LLP

By: _____
     Michael K. Wolensky
     Georgia Bar No. 773255
     mwolensky@schiffhardin.com
     Ethan H. Cohen
     Georgia Bar No. 173745
     ecohen@schiffhardin.com

     One Atlantic Center, Suite 2300
     1201 West Peachtree Street
     Atlanta, Georgia 30309
     Telephone:  404-437-7000
     Facsimile:  404-437-7100

Antony S. Burt
(*Motion to Appear pro hac vice pending*)
aburt@schiffhardin.com
Linda K. Stevens
(*Motion to Appear pro hac vice pending*)
lstevens@schiffhardin.com

233 S. Wacker Drive
Chicago, Illinois  60606
Telephone:  (312) 258-5500
Facsimile:  (312) 258-5600

*Attorneys for Plaintiff FDIC-Receiver*


CH2\9627677.1

# EXHIBIT F

**to**

**Mary L. Riche's March 23, 2011 Declaration in Support of Plaintiff's**
**Rule 56(d) Response and Opposition to Defendant's Motion for Summary Judgment and**
**In Support of Motion to Complete Discovery Prior to Summary Judgment Proceedings**

**FDIC**

**Federal Deposit Insurance Corporation**
550 17th Street NW, Washington, D.C. 20429-9990                                    General Counsel

January 25, 2011

Mr. David Baris
Executive Director
American Association of Bank Directors
National Capital Office
Suite 700
1250 24th Street, N.W.
Washington, D.C. 20037

Dear Mr. Baris:

Thank you for your letter of December 22, 2010, to Chairman Bair. The Chairman has asked that I reply to your letter.

In recent months, the Federal Deposit Insurance Corporation has discovered that former directors and officers of a considerable number of open banks and their outside counsel have removed large volumes of copies of highly confidential bank records, including Suspicious Activity Reports ("SARs"), bank examination reports, loan files, and/or other records that contain bank customer personally-identifying information ("PII"). As you know, these confidential records are protected from unauthorized disclosure by numerous federal laws, including the Bank Secrecy Act, the Gramm-Leach-Bliley Act, the Computer Fraud and Abuse Act, and the Fair and Accurate Credit Transactions Act, among other statutes, as well as federal regulations. These laws and regulations are violated whenever information contained in these documents is disclosed or treated in a manner that is inconsistent with their provisions and whenever copies of the documents are removed from the bank for an improper purpose or without appropriate safeguards and data encryption to limit access and ensure their confidentiality. It appears that such copying and removal is occurring in anticipation of possible legal action by the FDIC if the banks later fail.

Some of these banks subsequently did fail. When the FDIC is appointed as receiver of a failed insured financial institution, the FDIC steps into the institution's shoes. Pursuant to 12 U.S.C. § 1821(d)(2)(A), the FDIC as receiver obtains the exclusive rights and benefits associated with the failed institution's documents and records. These rights and benefits give the FDIC the unrestricted and sole right to possess and use the books and records of the failed institution.

Additionally, as receiver, the FDIC is obligated to comply with all federal laws that protect the confidentiality of bank records and to maintain an accurate and complete set of records both for the acquiring institution and for itself to effectively operate the receivership. When copies of confidential bank records are taken from a bank contrary to these legal protections, the FDIC has taken action to demand that the copies be promptly returned.

David Baris
January 25, 2011
Page 2

     This is not a new policy or change in policy but simply a necessary response to conduct that compromises the confidentiality of bank records and customer information. This improper record removal also results in added expense for the FDIC to recover the copies and potentially results in still further expense if the FDIC as receiver is required to notify affected bank customers that their PII was or may be compromised. It also results in needless expense to the bank itself if the bank does not fail or, even if it does, the FDIC as receiver later decides not to pursue any director and officer claims relating to that institution.

     At the same time, the FDIC recognizes that directors and officers must access bank records to operate the institution. If the institution fails, and a formal legal or administrative action is instituted, directors and officers have access to bank documents through discovery procedures reflected in court rules or agency regulations. We also recognize that directors and officers may have individual interests in accessing bank records after failure but prior to the institution of legal or administrative action. We have been and remain willing to accommodate these interests where appropriate, provided that any information furnished to the interested party is made subject to the terms of a suitable confidentiality agreement or protective order. However, directors, officers, and counsel engaging in what amounts to "self-help discovery" is not permitted and frustrates these procedures and practices.

     If you have any questions regarding anything in this letter, please feel free to contact me or Richard J. Osterman, Jr., Deputy General Counsel, at (202) 898-3706.

          Sincerely,

          Michael H. Krimminger
          Acting General Counsel

cc:     Rick Osterman